**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHRISTOPHER GALLI, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>DEMANDSCIENCE US, LLC,<br>Defendant. | Case No.: 1:25-cv-13683-JCB<br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Christopher Galli ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for violations of Colo. Rev. Stat. § 6-1-304 (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA") against Defendant DemandScience US, LLC ("Defendant" or "DemandScience"). Plaintiff makes the following allegations pursuant to his counsel's investigation and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. On May 27, 2005, former Colorado Governor Bill Owens signed into law HB05-1288,[1] which amended the PTFA to prohibit commercially listing a cell phone number in a directory, without permission.[2] *See* Colo. Rev. Stat. § 6-1-304(4)(a)(I).

2. This prohibition is designed to protect privacy. As former State Representative

[1] https://www.leg.state.co.us/clics2005a/csl.nsf/fsbillcont2/1BB0D3E00348AC6987256F90007C20C7?Open. *See also* https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3081&context=session-laws-2001-2050.

[2] https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/IndSumm/574E34C489356ADA87256FB100612E60?OpenDocument. *See also* https://www.leg.state.co.us/CLICS2005A/commsumm.nsf/91320994cb8e0b6e8725681d005cb995/574e34c489356ada87256fb100612e60?OpenDocument.

Mark Cloer,[3] a prime sponsor of HB05-1288,[4] stated in describing this new portion of the PTFA: "[m]ost people view their cell phones as private. They give out the number to friends and family and some colleagues. When their cell phone rings, they expect it to be important."[5]

3. Indeed, concern over cell phone privacy is widespread. According to a research paper presented in May 2005 at the American Association for Public Opinion Research (AAPOR)'s Annual Conference[6] and January 2006 at the American Statistical Association (ASA)'s Second International Conference on Telephone Survey Methodology:[7]

> [T]here appears to be a strong reluctance on the part of cell phone owners to have their cell phone numbers listed in a directory. …
>
> This reluctance on the part of respondents to have their cell phone number listed in a directory may be rooted in not wishing to incur additional costs due to unsolicited incoming calls. …
>
> A more likely reason for their unwillingness to have their cell phone number listed is that respondents view the cell phone as more of a private medium of communication than their land-line phone. They probably wish to restrict access to their cell phone number to family and friends.[8]

4. The Colorado General Assembly enacted subsection (4) of the PTFA to address these privacy concerns and to protect cell phone users from the misappropriation of their personal information. This aligns with the PTFA's overall purpose, as articulated by Colo. Rev. Stat. § 6-1-301:

> The general assembly hereby finds, determines, and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the general assembly finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of

[3] *See* https://www.leg.state.co.us/clics2005a/directory.nsf.

[4] https://scholar.law.colorado.edu/cgi/viewcontent.cgi?article=3289&context=session-laws-2001-2050 at p. 2461. *See also* https://www.leg.state.co.us/CLICS2005A/csl.nsf/StatusAll?OpenFrameSet.

[5] https://www.9news.com/article/news/local/politics/legislative-library-feb-23-2005/73-344789916.

[6] https://aapor.org/wp-content/uploads/2024/05/AAPORPrograms2005.pdf at pp. 13, 84.

[7] https://scholar.google.com/citations?view_op=view_citation&hl=en&user=I2jkzr0AAAAJ&citation_for_view=I2jkzr0AAAAJ:M3ejUd6NZC8C; https://ww2.amstat.org/meetings/tsmii/2006/index.cfm?fuseaction=main.

[8] http://www.asasrms.org/Proceedings/y2005/files/JSM2005-000345.pdf at p. 4005.

> consumers, and, particularly, elderly, homebound, and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.

5. Colo. Rev. Stat. § 6-1-304(4) provides, in pertinent part:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

6. Despite this abundantly clear proscription, Defendant has listed the cellular telephone numbers of thousands of Colorado residents in its for-sale and for-profit directory, without requesting (let alone actually receiving) affirmative consent to such listings.

7. Thus, while Defendant profits handsomely from its unauthorized commercial listing of Plaintiff's and other Class Members' personal information, it does so at the expense of Coloradans' statutory privacy rights, under the PTFA.

8. Not only is Defendant's misappropriation unlawful – it is also dangerous. The Federal Trade Commission's ("FTC") report on "Data Brokers" states:

> There are a number of potential risks to consumers from data brokers' collection and use of consumer data. … [T]hey may facilitate the sending of advertisements … which some consumers may find troubling and which could undermine their trust in the marketplace. Moreover, … people search products can be used to facilitate harassment, or even stalking, and may expose domestic violence victims, law enforcement officers, prosecutors, public officials, or other individuals to retaliation or other harm. [In addition, s]toring [d]ata [a]bout [c]onsumers [i]ndefinitely [m]ay [c]reate [s]ecurity [r]isks[.][9]

9. Plaintiff brings this action to prevent Defendant from further violating the privacy rights of Colorado cell phone users and to recover statutory damages from Defendant, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

---

[9] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. 48.

## PARTIES

10. Plaintiff Christopher Galli is, and has been at all relevant times, a resident and citizen of Centennial, Colorado. Plaintiff's cellular telephone number was listed by Defendant in its directory, available at demandscience.com, to advertise and/or to advertise products and services and/or pursuant to Defendant's provision of its paid subscription services. Defendant never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listing. In fact, Plaintiff has no relationship with Defendant whatsoever, and, to date, has never visited Defendant's website. Plaintiff had never heard of Defendant and had no reasonable ability to discover Defendant's use of his personal information until shortly before filing suit.

11. Defendant DemandScience US, LLC is a Massachusetts limited liability company with its principal place of business at 222 Rosewood Drive, Danvers, Massachusetts 01923. Defendant is primarily engaged in the business of selling or leasing goods or services. Specifically, Defendant operates the directory demandscience.com. Therein, and for commercial purposes, Defendant has listed the cellular telephone numbers of thousands of individuals whom it knows to reside in Colorado.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to Mass. Gen. Laws ch. 212, §§ 3 and 4 because this is a civil action where the aggregate claims of all members of the proposed class are in excess of $50,000, exclusive of interest and costs.

13. The Court has personal jurisdiction over Defendant pursuant to Mass. Gen. Laws ch. 223A § 2 because Defendant is organized under the laws of the Commonwealth and maintains its principal place of business in the Commonwealth.

14. Venue is proper in the Business Litigation Session ("BLS"), pursuant to Superior

Court Administrative Directive No. 24-1, because this case is complex and is brought as a class action which will require substantial case management.

## FACTUAL ALLEGATIONS

**Overview of Defendant's Directory**

15. Defendant is a data broker – a company "that collect[s] consumers' personal information and resell[s] or share[s] that information with others[.]"[10]

16. Specifically, Defendant provides an online business-to-business or "B2B Lead Generation Directory Service[, a] platform[] … that facilitate[s] identifying and acquiring potential business-to-business leads. This kind of service compiles and organizes … contact details, business categories, industry, size, location, and other relevant data. B2B Lead Generation Directories … often offer a range of features tailored to B2B marketing and sales needs."[11] Defendant further explains who its customers are and how customers use Defendant's data:

- "We help B2B marketing and revenue teams create and progress pipeline without the burden of martech sprawl. Our approach unites verified data, content intelligence, always-on orchestration, and AI-fused human expertise – so you get results you can see, prove, and scale."[12]
- "Imagine being able to tailor your marketing strategy to a perfect audience at exactly the right time. … [DemandScience's] data allows you to 'jump the queue' and gives you the opportunity to pitch to potential customers at exactly the right moment. … For most companies, this data provides deeper insights into the buying process to better tailor marketing strategies to their target audience."[13]
- "Identify your best customers[.] … Filter across millions of contacts and use unique buyer personas to select ideal customers. More accurate data = better targeted lists."[14]

[10] https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf at p. i.

[11] https://targetron.com/lead-generation-directory.

[12] https://demandscience.com/about.

[13] https://demandscience.com/resources/blog/what-is-buyer-intent-data/.

[14] https://demandscience.com/solutions/sales/.

- "[DemandScience] makes marketing and sales easier by enabling organizations to find the right prospects faster and target in-market buyers. The DemandScience Live Data Factory uses innovative technologies to deliver accurate data with relevant intent signals, helping organizations accelerate the buyers' journey from top-of-funnel to conversion."[15]

17. Defendant and its competitors monetize people's personal details through their directories – some of which are ad-supported and give users free access to the data, and others of which furnish reports about people for a fee.

18. Defendant's directory is available at demandscience.com. There, anyone on the Internet can view Coloradans' cell phone numbers, email addresses, job titles, places of work, and more.

19. This is achieved by simply searching for individuals using filters such as name, job title, company, location, and/or other parameters:




[15] https://demandscience.com/press-releases/klarity-by-demandscience-makes-one-click-prospecting-a-reality-for-b2b-sales-professionals/.

20. Next, a demandscience.com user is furnished with a list of search results featuring individuals matching the selected parameters. From this search results list, a demandscience.com user can click on a specific individual to view a redacted preview of the individual's contact information. A demandscience.com user can then click on a button labeled "Show Info" to spend a credit and view the individual's unredacted cell phone number.






21. Upon clicking "Show Info," a demandscience.com user is presented with the searched individual's unredacted cell phone number and other pieces of identifying information.




22. As the above images of demandscience.com make clear, Defendant knowingly lists Coloradans' cell phone numbers. Indeed, Defendant advertises that it allows its users to "[i]ncrease [their] connect rates focus on cell phone and direct dials[.]"[16] Further, Defendant states that it can help its users "[f]ocus [their] resources on contacts with verified and active emails and phone numbers."[17]

23. Defendant lists Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice demandscience.com users to pay to acquire access to demandscience.com subscriptions and/or credits;[18] and (b) to fulfill Defendant's obligations to

[16] https://demandscience.com/resources/op-buyer-intent-with-demandscience-intelligence/.

[17] https://demandscience.com/data/confirmed-connections/.

[18] Defendant does not make the precise prices of its paid subscription plans publicly available and primarily encourages individuals to reach out for a quote. *See, e.g.*, https://demandscience.com/discover-roi-bant-leads-calculator/ (describing a "quote provided by our sales team based on volume & inventory."). "[C]ontact credits [are then] allocated to [DemandScience customers] for access. The total credits are determined during the sales process with [a DemandScience] sales representative." https://support.demandscience.com/hc/en-us/articles/38446490159763-Understanding-Quotas. "[O]ne credit equals one contact or company along with all associated data." https://www.youtube.com/watch?v=JLzNHCzm28I at 1:05.

demandscience.com users who have paid for demandscience.com subscriptions and/or credits. Indeed, that is Defendant's entire business model. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers.

**II. Defendant's Conduct Harms Coloradans**

24. Consumer data is key to the $26 billion-per-year online advertising industry in the United States.[19] Clearly, and per the FTC, consumer data possesses inherent monetary value:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[20]

25. In fact, individuals' private information has become such a valuable commodity that companies now offer individuals the opportunity to monetize their personal data.[21]

26. These companies' business models capitalize on a fundamental principle underlying the modern information marketplace: Consumers recognize the economic value of their private data. Along these lines, research shows that consumers are willing to pay a premium to purchase services from companies that adhere to more stringent policies of protecting their data.[22] A 2014 survey conducted by Harris Interactive on behalf of TRUSTe, Inc. showed that 89 percent of consumers avoid doing business with companies who they believe

---

[19] http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html.

[20] https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf at p. 2.

[21] *See, e.g.*, https://www.washingtonpost.com/technology/2023/02/06/consumers-paid-money-data/; http://www.nytimes.com/2012/02/13/technology/start-ups-aim-to-help-users-put-a-price-on-their-personal-data.html; https://techcrunch.com/2023/08/16/caden-lands-15m-to-let-users-monetize-their-personal-data/; https://www.theverge.com/2019/6/11/18661595/facebook-study-app-monitor-phone-usage-pay; https://sifted.eu/articles/gener8; https://www.theverge.com/2012/2/8/2785751/google-screenwise-panel-web-monitoring-knowledge-networks; https://www.sidehustlenation.com/get-paid-for-your-data/; https://millennialmoneyman.com/get-paid-for-your-data/.

[22] *See, e.g.*, https://web.archive.org/web/20250622135647/https://www.enisa.europa.eu/sites/default/files/publications/monetising_privacy.pdf; https://papers.ssrn.com/sol3/Delivery.cfm?abstractid=3305347.

do not protect their privacy.[23] The same is true for 80 percent of smartphone users, who say that they avoid using smartphone apps that they don't believe protect their privacy.[24]

27. Defendant's misappropriation of Coloradans' cell phone numbers undeniably deprives state residents of the ability to enjoy their PTFA privacy rights. It also deprives them of the real, quantifiable value of such data. Indeed, Defendant's ability to sell Plaintiff's and class members' cell phone numbers for profit is itself proof that such information has monetary value.

28. Further, sites like Defendant's "offer a wealth of information that can be exploited by malicious actors."[25] For one, "[b]undling [personal data] all together and making it so easily accessible can … put ordinary people at risk of … stalking and other forms of harassment."[26] Second, sites like Defendant's "comprehensive data allows cybercriminals to build detailed profiles of potential victims, making it easier to craft convincing scams or carry out identity theft."[27] This "put[s] almost anyone within the reach of fraudulent telemarketers[]" and other wrongdoers.[28]

29. Information disclosures like Defendant's are particularly dangerous to the elderly. "Older Americans are perfect telemarketing customers, analysts say, because they are often at home, rely on delivery services, and are lonely for the companionship that telephone callers provide."[29] The FTC notes that "[t]he elderly often are the deliberate targets of fraudulent telemarketers who take advantage of the fact that many older people have cash reserves or other

[23] *See* https://web.archive.org/web/20190820142832/http://www.theagitator.net/wp-content/uploads/012714_ConsumerConfidenceReport_US1.pdf at p. 3.

[24] *Id.*

[25] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[26] https://innovation.consumerreports.org/Data-Defense_-Evaluating-People-Search-Site-Removal-Services-.pdf.

[27] https://www.foxnews.com/tech/dangerous-intersection-people-search-sites-scams.

[28] http://www.nytimes.com/2007/05/20/business/20tele.html.

[29] *Id.*

assets to spend on seemingly attractive offers."[30]

30. Making matters worse, "[o]nce marked as receptive to [a specific] type of spam, a consumer often is bombarded with similar fraudulent offers from a host of scam artists."[31]

31. Cell phone numbers are also a key piece of information for SIM swappers - hackers who take over a target's phone number in order to receive their calls and texts, which in turn can let them break into all manner of accounts. These sorts of hackers have been linked to countless hacks of individual people in order to steal online usernames or cryptocurrency. Some have worked directly with ransomware gangs from Eastern Europe. Armed with a cell phone number, a SIM swapper may then impersonate the victim and convince their telecom to reroute text messages to a SIM card the hacker controls. From there, the hacker can request password reset text messages, or multifactor authentication codes, and log in to the victim's valuable accounts. This could include accounts that store cryptocurrency or, even more damaging, their email, which in turn could grant access to many other accounts. For this reason, the FBI recommends on its website that people do not publicly advertise their phone number. "Protect your personal and financial information. Don't advertise your phone number, address, or financial assets, including ownership or investment of cryptocurrency, on social media sites," the site reads.[32]

//

//

//

[30] https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-fraud-against-seniors/agingtestimony.pdf at p. 1.

[31] *Id.* at p. 3.

[32] https://www.wired.com/story/a-researcher-figured-out-how-to-reveal-any-phone-number-linked-to-a-google-account/; https://www.fbi.gov/contact-us/field-offices/phoenix/news/press-releases/fbi-tech-tuesday-sim-swapping.

**CLASS REPRESENTATION ALLEGATIONS**

32. Plaintiff seeks to represent a class defined as all Colorado residents whose cell phone numbers were listed on demandscience.com without their consent during the applicable statute of limitations period (the "Class").

33. Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

34. **Numerosity:** The Class is composed of at least thousands of individuals, the joinder of which in one action would be impracticable. The disposition of their claims through this class action will benefit both the parties and the Court.

35. **Existence and Predominance of Common Questions of Fact and Law:** There is a well-defined community of interest in the questions of law and fact involved affecting the members of the proposed Class. The questions of law and fact common to the proposed Class predominate over questions affecting only individual Class Members. Such questions include, but are not limited to, the following: whether Defendant violated Colo. Rev. Stat. § 6-1-304(4)(a)(I); and whether Plaintiff and Class Members are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

36. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because Plaintiff, like all other Class Members, had his cell phone number listed on demandscience.com for a commercial purpose; Defendant did so without requesting or receiving Plaintiff's affirmative consent (through written, oral, or electronic means); and Defendant's misappropriation of Plaintiff's personal data (including the economic value thereof) came at the expense of Plaintiff's PTFA privacy rights.

37. **<u>Adequacy</u>:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

38. **<u>Superiority</u>:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

## <u>COUNT I</u>
## Violation of the Prevention of Telemarketing Fraud Act, Colo. Rev. Stat. § 6-1-304(4)(a)(I)

39. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

40. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

41. Colo. Rev. Stat. § 6-1-304(4) provides:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

42. Defendant failed to comply with this PTFA mandate.

43. Defendant knowingly lists Coloradans' cellular telephone or mobile numbers. Indeed, Defendant advertises that it allows its users to "[i]ncrease [their] connect rates focus on cell phone and direct dials[.]"[33] Further, Defendant states that it can help its users "[f]ocus [their] resources on contacts with verified and active emails and phone numbers."[34]

44. To "list" in this context means "to have or show (someone or something) as part of a list, register, or record." *See List,* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/list.

45. Defendant's website, demandscience.com, is a directory – i.e., an "electronic resource containing lists of information, usually in alphabetical order, for example people's phone numbers or the names and addresses of businesses in a particular area[.]" Directory, Oxford Learner's Dictionary, https://oxfordlearnersdictionaries.com/us/definition/english/directory.[35]

46. Defendant lists Plaintiff's and Class Members' cell phone numbers for a commercial purpose: (a) to entice demandscience.com users to pay to acquire access to

---

[33] https://demandscience.com/resources/op-buyer-intent-with-demandscience-intelligence/.

[34] https://demandscience.com/data/confirmed-connections/.

[35] *See also Directory*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/directory ("an alphabetical or classified list (as of names and addresses)[.]"); *Directory*, Cambridge Essential American English Dictionary, https://dictionary.cambridge.org/us/dictionary/essential-american-english/directory ("a book or list of names and numbers"); *Directory*, AllWords.com Multi-Lingual Dictionary, https://www.allwords.com/word-directory.html ("A list of names, address etc., of specific classes of people or organizations, often in alphabetical order or in some classification.").

demandscience.com subscriptions and/or credits; and (b) to fulfill Defendant's obligations to demandscience.com users who have paid for demandscience.com subscriptions and/or credits. Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers.

47. Defendant never requests nor receives Coloradans' "affirmative consent, through written, oral, or electronic means, to such listing[.]" Colo. Rev. Stat. § 6-1-304(4)(a)(I). In fact, Defendant never requests nor receives any consent whatsoever, affirmative or otherwise, to list cell phone numbers. Rather, Defendant lists the cell phone numbers of Coloradans it has never engaged with, has had no connection to, and who are unaware of its existence.

48. Defendant's misappropriation of Class Members' personal data (including the economic value thereof) came at the expense of Class Members' PTFA privacy rights. It deprived Class Members of the real, quantifiable value of such data. And it exposed Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing.

49. Thus, on behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class; (3) damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense; and (4) reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c).

//

//

//

## RELIEF DEMANDED

WHEREFORE, Plaintiff on behalf of himself and the proposed Class, respectfully requests that this Court enter an Order:

(a) Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing Plaintiff's counsel as Class Counsel;

(b) Declaring that Defendant's actions, as set out above, violate Colo. Rev. Stat. § 6-1-304(4)(a)(I) (Colorado's "Prevention of Telemarketing Fraud Act" or "PTFA");

(c) Awarding damages, pursuant to Colo. Rev. Stat. § 6-1-305(1)(c), of at least three hundred dollars and not more than five hundred dollars for each first offense, and at least five hundred dollars and not more than one thousand dollars for each second or subsequent offense;

(d) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia*, an Order requiring Defendant to comply with the PTFA;

(e) Awarding Plaintiff and the Class their reasonable attorneys' fees and other litigation costs pursuant to Colo. Rev. Stat. § 6-1-305(1)(c);

(f) Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

(g) Awarding such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: February 2, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

*/s/ Matthew A. Girardi*
Matthew A. Girardi

Matthew A. Girardi (*pro hac vice*)
50 Main Street, Suite 475
White Plains, NY 10106
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
Email: mgirardi@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice application forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com

**BIRNBAUM & GODKIN, LLP**
David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Telephone: (617) 307-6100
Email: godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was delivered to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on the above date.

*/s/ Matthew A. Girardi*
Matthew A. Girardi